IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WILLIAM P. BURROWS, OTTO G. BARTON, II, CHRIS WILLIAM BENDER, and TERRY WALTER, | ) ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) | CIVIL ACTION NO. 05-458J |
| v. | ) ) | JUDGE GIBSON |
| TOWNSHIP OF LOGAN, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER OF COURT

### I. SYNOPSIS

This matter comes before the Court on the Motion to Dismiss (Document No. 5, 06-188J) and the Motion for Summary Judgment (Document No. 17) filed by Defendant Township of Logan ("Logan"). For the reasons that follow, these motions will be denied.

### II. BACKGROUND

At all times relevant to this case, Plaintiffs William P. Burrows ("Burrows"), Otto G. Barton, II ("Barton"), Chris William Bender ("Bender"), and Terry Walter ("Walter") were employed as police officers for Logan. Document No. 7 (06-188J), ¶ 2 & Document No. 19, ¶ 2. On May 3, 2004, Logan's Board of Supervisors ("Board") authorized a promotional process for the Logan Township Police Department ("Department"). Document No. 7 (06-188J), ¶ 3. This authorization cleared the way for two officers to be promoted to the rank of sergeant. *Id.* A total of eight officers, all of whom were employed by the Department, applied for the open sergeant positions. *Id.* ¶ 4.

1

Logan's notice of the vacancies, dated May 3, 2004, set forth the minimum qualifications and skills upon which the promotion decisions would be made. *Id.* ¶ 5. The notice also described three steps of the promotion process, which consisted of application submissions, written testing and oral interviews. *Id.* ¶ 6. On June 18, 2004, the Department's Wage Committee filed a grievance concerning the promotional process. *Id.* ¶ 7. In response to the grievance, Logan reimplemented its historical practice of promoting officers through merit-based appointments *Id.* ¶ 8.

The Acting Chief of Police, Ronald Heller ("Chief Heller"), recommended that the Board add a third sergeant position. Document Nos. 19 & 24, ¶ 8. The Board accepted this recommendation. *Id.* Barton, Bender and Walter, along with five others, applied for the positions. *Id.* ¶ 18. At that time, Barton was 50 years old, Bender was 41 years old, and Walter was 40 years old. *Id.* The other applicants were 29-year-old Matthew Lindsey ("Lindsey"), 36-year-old Shawn Little ("Little"), 37-year-old Kenneth Patterson ("Patterson"), 39-year-old David Hoover ("Hoover"), and 55-year-old John Flinn ("Flinn"). Burrows, who was 50 years old, did not apply for a sergeant position, apparently because of his disagreements with the promotional process. *Id.* ¶¶ 10-11, 19. Nevertheless, Chief Heller recommended that Burrows be offered one of the positions. *Id.* ¶ 15.

At a meeting on July 22, 2004, the Board voted to promote Patterson, Hoover and Flinn to the three sergeant positions. *Id.* ¶ 9. Burrows, Barton, Bender and Walter filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that they had not been promoted on account of age, in violation of the Age Discrimination in Employment Act ("ADEA") [29 U.S.C. § 621 *et seq.*]. Document No. 1, ¶ 39 & Document No. 1 (06-188J), ¶ 44. Their administrative remedies have been exhausted. *Id.*

Burrows commenced an action against Logan on December 20, 2005, alleging that Logan's failure to promote him to the position of sergeant had constituted a violation of the ADEA. Document No. 1. Barton, Bender and Walter commenced a separate action against Logan on August 24, 2006, alleging ADEA violations in connection with Logan's failure to promote them to the open positions. Document No. 1 (06-188J). Logan filed a motion to consolidate the two actions on November 10, 2006. Document No. 4 (06-188J). On November 13, 2006, Logan filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking the dismissal of the action commenced by Barton, Bender and Walter. Document No. 5 (06-188J). Since evidence outside of the pleadings was offered in support of the motion to dismiss, Logan asked the Court to convert the motion into a motion for summary judgment. *Id.* The Court granted Logan's motion to consolidate on November 14, 2006. Document No. 9 & Document No. 9 (06-188J). On January 26, 2007, Logan filed a motion for summary judgment with respect to the claim asserted by Burrows. Document No. 17. The motions filed by Logan are the subject of this memorandum opinion.

### III. SUMMARY JUDGMENT STANDARDS

> Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S. Ct. 2548, 2552-57, 91 L. Ed. 2d 265, 273-280 (1986); Fed. R. Civ. P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-212 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani Sav. And Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638 (3d Cir. 1993).

*Troy Chem. Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

As to materiality, the substantive law will identify which facts are material. Only

3

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986).

## IV. JURISDICTION AND VENUE

The Court has jurisdiction in this case pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 216(b) and 29 U.S.C. § 626(b)-(c). Venue is proper under 28 U.S.C. § 1391(b).

## V. DISCUSSION

Before proceeding to the factual circumstances of this case, the Court must take note of some preliminary points. The ADEA defines the term "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year," including "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State." 29 U.S.C. § 630(b). As a political subdivision of Pennsylvania, Logan is bound by the ADEA's statutory mandates. The relevant portion of the ADEA provides:

> **§ 623. Prohibition of age discrimination**
> **(a) Employer practices.** It shall be unlawful for an employer--
>     (1) to fail or refuse to hire or to discharge any individual or otherwise

4

> discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
> (3) to reduce the wage rate of any employee in order to comply with this Act.

29 U.S.C. § 623(a). The plain language of the ADEA makes it clear that the prohibitions contained therein are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a).

Since this is a federal employment discrimination case in which no direct evidence of discrimination is presented, the United States Supreme Court's analyses in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), provide the formulation for allocating the requisite burdens of proof and production for purposes of the pending motions for summary judgment.[1] Generally speaking, a plaintiff who has no direct evidence of discrimination must establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802-803, 93 S. Ct. at 1824-1825, 36 L. Ed. 2d at 677-678. If a *prima facie* case is established, the defendant must then articulate a legitimate, nondiscriminatory reason for treating the plaintiff in an adverse manner. *Id.* If the defendant articulates a legitimate, nondiscriminatory reason for the adverse treatment, the plaintiff can defeat a

---

[1] The Supreme Court has not held that the *McDonnell Douglas/Burdine* framework is applicable to ADEA cases. Instead, it has assumed *arguendo* that the *McDonnell Douglas/Burdine* framework applies in this context. *Smith v. City of Jackson*, 544 U.S. 228, 252, 125 S. Ct. 1536, 1551, 161 L. Ed. 2d 410, 429 (2005)(O'Connor, J., concurring in the judgment); *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105, 116 (2000); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S. Ct. 1307, 1309-1310, 134 L. Ed. 2d 433, 438 (1996). The United States Court of Appeals for the Third Circuit, however, has held that the *McDonnell Douglas/Burdine* burden-shifting framework applies in ADEA cases that do not involve direct evidence of age discrimination. *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1108 (3d Cir. 1997)(*en banc*).

motion for summary judgment by pointing to some evidence from which a rational finder of fact could reasonably either disbelieve the employer's articulated explanation or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The plaintiff "may succeed in this either directly by persuading the court [for purposes of summary judgment] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095, 67 L. Ed. 2d at 217.

The *McDonnell Douglas/Burdine* framework does not apply in cases in which direct evidence of discrimination is presented. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1, 9 (2002). Direct evidence of discrimination is evidence that is "so revealing of discriminatory animus that it is not necessary to rely on any presumption from the *prima facie* case to shift the burden of production." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096, n. 4 (3d Cir. 1995). In such cases, there is no need for an inference of discrimination, since the discrimination is readily apparent.

However, where the *McDonnell Douglas/Burdine* framework applies, "the precise elements of a *prima facie* case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Swierkiewicz*, 534 U.S. at 512, 122 S. Ct. at 997, 152 L. Ed. 2d at 9 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 2949, 57 L. Ed. 2d 957, 967 (1978)). In *Jones v. School District of Philadelphia*, 198 F.3d 403 (3d Cir. 1999), the Third Circuit explained that "the elements of a *prima facie* case depend on the facts of the particular case," and that "a *prima facie* case cannot be established on a one-size-fits-all basis." *Id.* at 411. Thus, "the *prima facie* test remains

6

flexible and must be tailored to fit the specific context in which it is applied." *Sarullo v. United States Postal Service*, 352 F.3d 789, 797-798 (3d Cir. 2003).

In *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996), the Supreme Court held that the statutory language limiting the ADEA's protections to those who have attained the age of 40 is relevant for no purpose other than determining whether a plaintiff is within the class of persons entitled to statutory protection. *Id.* at 313, 116 S. Ct. at 1310, 134 L. Ed. 2d at 439 ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). The Supreme Court explained the relationship between the substantive provisions of the ADEA and 29 U.S.C. § 631(a)'s delineation of the protected class as those who have reached the age of 40:

> The discrimination prohibited by the ADEA is discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), though the prohibition is "limited to individuals who are at least 40 years of age," § 631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age*. Or to put the point more concretely, there can be no greater inference of *age* discrimination (as opposed to "40 or over" discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old. Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas prima facie* case.

*Id.* at 312, 116 S. Ct. at 1310, 134 L. Ed. 2d at 438 (emphasis in original). Notwithstanding the ADEA's prohibition of discrimination based on age, the prohibition only applies in one direction (i.e.,

7

prohibiting discrimination which favors the young and disfavors the old, but not prohibiting discrimination which favors the old and disfavors the young). In *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 124 S. Ct. 1236, 157 L. Ed. 2d 1094 (2004), the Supreme Court held that the ADEA does not prohibit discrimination against younger individuals. The Supreme Court explained that, within the context of 29 U.S.C. § 623(a)(1), "The word 'age' takes on a definite meaning from being in the phrase 'discriminat[ion] . . . because of such individual's age,' occurring as that phrase does in a statute structured and manifestly intended to protect the older from arbitrary favor for the younger." *Id.* at 583, 124 S. Ct. at 1239, 157 L. Ed. 2d at 1103. Where the plaintiff is within the class of persons protected under the ADEA, meaning age 40 or above, and alleges that the defendant committed an adverse employment action against the plaintiff because of that advanced age, the dispositive question is whether the defendant's adverse employment decision was "actually motivated" by the plaintiff's age. *Glanzman v. Metropolitan Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004). In this context, age "actually motivated" a defendant's decision if it played a role in the decisionmaking process and "had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105, 116 (2000).

At the outset, the Court notes that Logan does not articulate legitimate, nondiscriminatory reasons for its promotion decisions. Instead, Logan merely argues that the Plaintiffs cannot establish a *prima facie* case of age discrimination. Document No. 18, pp. 7-11 & Document No. 22, pp. 4-7. It is not clear to the Court why Logan did not explain its reasons for not promoting any of the Plaintiffs. This omission effectively limits the Court's inquiry at this stage to the narrow question of whether the Plaintiffs can establish a *prima facie* case under the ADEA.

To establish a *prima facie* case in a failure-to-hire/failure-to-promote case, a plaintiff must show that: (1) he or she was within the class of persons protected under the ADEA (i.e., he or she was "at least 40 years of age" within the meaning of § 631(a)); (2) he or she suffered an adverse employment action (i.e., the defendant "fail[ed] or refuse[d] to hire" him or her within the meaning of § 623(a)(1)); and (3) the adverse employment action occurred under circumstances giving rise to an inference of age discrimination. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004). It is undisputed that the Plaintiffs have satisfied the first two elements. Only the third element is at issue.

The question of whether a personnel decision has been made under circumstances giving rise to an inference of unlawful discrimination often encompasses several different factors. Courts generally require a plaintiff to show that he or she was qualified for the position in question. *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249 (3d Cir. 2002). However, such a showing is unnecessary where the applicant ultimately chosen for the position was unqualified or no more qualified than the plaintiff. *Scheidemantle v. Slippery Rock Univ.*, 470 F.3d 535, 536-542 (3d Cir. 2006). Generally speaking, an inference of age discrimination can arise where an employer opts to hire someone other than the plaintiff who is both similarly situated to, and sufficiently younger than, the plaintiff. *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir. 1999). Nonetheless, a plaintiff can establish a *prima facie* case even where these standards are not met, if case-specific evidence gives rise to an inference of age discrimination. *Fitzpatrick v. Nat'l Mobile Television*, 364 F. Supp. 2d 483, 491-492, n.4 (M.D. Pa. 2005) (observing that "if the defendant terminates an older employee for a reason for which it would not have terminated a younger employee, the age of the older employee's replacement is immaterial."); *Jehling v. Mellon Bank, N.A.*, 2006 WL 1508963, at *6, 2006 U.S. Dist. LEXIS 35240,

9

at *16-17 (W.D. Pa. May 31, 2006) ("Although the Court of Appeals for the Third Circuit has not yet established a bright line rule regarding the age difference that will satisfy the 'sufficiently younger' element, it has found that absent other evidence, an age difference of as much as seven years is not sufficient to support an inference of discrimination."). The specific criteria employed in prior ADEA cases with respect to the "inference of discrimination" issue are not rigid prerequisites to ADEA liability. Instead, their relevance in a particular ADEA case is determined by reference to their probative value regarding whether the challenged employment action has occurred under circumstances giving rise to an inference of age discrimination. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433, 438 (1996) ("Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas prima facie* case.").

Additionally, the evidence presented by a plaintiff in an employment discrimination case need not be considered only with respect to a single issue. In *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358 (3d Cir. 2008), the Third Circuit observed that "evidence supporting the *prima facie* case is often helpful in the pretext stage, and [that] nothing about the *McDonnell Douglas* formula requires [a court] to ration the evidence between one stage or the other." *Id.* at 370. Evidence that is used to establish a plaintiff's *prima facie* case may also be used to discredit the defendant's articulated reasons for the challenged employment action. Similarly, evidence that is relied upon by a plaintiff to discredit the defendant's articulated reasons for the challenged employment action may likewise be considered at the *prima facie* stage. What matters is whether a reasonable trier of fact could infer that a discriminatory animus motivated the defendant's decision. Accordingly, the Court must consider the entire record,

10

viewing the evidence in the light most favorable to the Plaintiffs, in determining whether a *prima facie* case of age discrimination has been established. *Roach v. Am. Radio Sys. Corp.*, 80 F. Supp. 2d 530, 532 (W.D. Pa. 1999).

The inquiry in this case is complicated by the fact that Burrows did not formally apply for a sergeant position. In *Equal Employment Opportunity Commission v. Metal Service Co.*, 892 F.2d 341, 348 (3d Cir. 1990), a case involving Title VII of the Civil Rights Act of 1964 ("Title VII") [42 U.S.C. § 2000e *et seq.*], the Court of Appeals made it clear that the failure of a plaintiff to formally apply for a position does not necessarily preclude him or her from maintaining a discriminatory failure-to-hire/failure-to-promote case under a federal anti-discrimination statute. In order to maintain an action, however, a plaintiff must show that his or her interest in the relevant position was known to his or her employer, or that the employer used a secretive selection process in order to prevent members of a statutorily protected class from applying. *Metal Service Co.*, 892 F.2d at 348-352.

In other words, where a known discriminatory policy deters someone from applying for a position, he or she need not formally apply in order to maintain an action under the applicable anti-discrimination statute. *Easley v. Empire, Inc.*, 757 F.2d 923, 930, n. 7 (8th Cir. 1985). The reason for this is rather simple. The ADEA makes it unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). Under ordinary circumstances, employers select an applicant for a position, just as voters typically elect a candidate to a public office. Where one opts not to apply for a position, he or she is likely to not be considered because of his or her failure to apply. Thus, the element of causation (i.e., failure to hire on the basis of an impermissible discriminatory criterion) is lacking. Nevertheless, where an employer is aware of

11

a particular individual's interest in a position and is able to hire or promote that individual despite his or her failure to formally apply, the absence of a formal application may not be the reason for the decision not to hire or promote him or her. In such an instance, the possibility of illegal discrimination arises. An employer violates the ADEA when it fails to hire or promote an interested and qualified older individual under circumstances in which a similarly situated younger individual would have been hired or promoted. *See Narin v. Lower Merion Twp. Sch. Dist.*, 206 F.3d 323, 331 (3d Cir. 2000). The standard must not be more rigorous for those who are within a statutorily protected class. *See Scheidemantle v. Slippery Rock Univ.*, 470 F.3d 535, 541-542 (3d Cir. 2006). Therefore, Burrows' failure to apply for a sergeant position is not fatal to his ADEA claim if he can establish that a similarly situated younger individual would have been hired or promoted in the absence of a formal application.

The circumstances surrounding Burrows' decision not to apply for a sergeant position are relevant to the Court's inquiry. On May 3, 2004, Logan posted a notice that the Board had authorized the promotion of two officers to the rank of sergeant. Document No. 8-2 (06-188J), pp. 4-5. The notice stated, in pertinent part, as follows:

> Officers who meet the minimum qualifications are encouraged to participate in the promotional process.
>
> Experience and Education: Any combination equivalent to experience and education that could likely provide the required knowledge and abilities would be qualifying. A typical way to obtain the knowledge and abilities would be:
>
> • Experience–three years of experience at the level of police officer is minimal. Four or more years of experience is desirable.
> • Education–Completion of semester hours or possession of a Bachelor's degree from an accredited college or university with course work in Criminal Justice, Organizational Behavior, Management, Public Administration or closely related field is highly desirable.

12

> • License or Certificate–Completion of all basic and in-service training as required by Pennsylvania statutes and regulations.
>
> Officers interested in promotion to the rank of Sergeant in the Logan Township Police Department should submit a written application replying to the following items and describe how the officer feels he possesses the characteristics the Board of Supervisors has identified as desirable and how the officer has used said traits throughout his career.

*Id.*, p. 4. In a deposition, Burrows testified that he had not applied for a sergeant position because of objections to the hiring criteria. Document No. 20-6, p. 4. He explained that he had been an "Officer in Charge" ("OIC") for ten years, and that he had demonstrated his ability to supervise other officers. *Id.* The notice apparently led him to believe that the Board was interested in promoting only those officers who had college degrees, dissuading him from submitting an application. *Id.*

On June 18, 2004, the Department's Wage Committee filed a grievance concerning the criteria adopted by the Board for selecting the officers to be promoted. Document No. 23-4, p. 1. Among the complaints raised in the grievance was the fact that the criteria did not account for the applicant officers' OIC experience. *Id.* The grievance apparently led the Board to eliminate the criteria listed in the notice. At that time, Logan's Board of Supervisors included Jerry Fulare ("Supervisor Fulare"), Frank Meloy ("Supervisor Meloy") and Diane Meling ("Supervisor Meling"). Document No. 11-6, p. 1. On July 22, 2004, the Board promoted Flinn, Hoover and Patterson to the rank of sergeant. The relevant portion of the Board's meeting minutes reads as follows:

> Upon motion by Supervisor Fulare, seconded by Supervisor Meloy, and carried unanimously by Supervisor Meling, the Board appointed, as has been the past practice of the Supervisors, Officers Flinn, Hoover, and Patterson to the rank of Sergeant, and the Board members indicated that two of the appointments fill the two vacant Sergeant positions, and that a third Sergeant was approved at the suggestion of Chief Heller. The Board congratulated the officers.

13

Document No. 8-2 (06-188J), p. 7, ¶ 9. The next day, Bonnie Lewis ("Lewis"), the Township Manager, sent the following memorandum to all members of the Department:

> This memo will confirm the Township's action to suspend the implementation of the promotional process set forth in the departmental notice dated May 3, 2004 and which was the subject of a grievance filed by the department of June 18, 2004. As a result, the Township acted to make its decision regarding promotions to the position of police sergeant by appointment based on merit, as has been done in the past.
>
> Despite this decision, the Township remains intent on implementing a professional promotional process by which future promotions will be determined. The Township will be contacting you in the near future to discuss this matter further.

Document No. 23-5, p. 1. The timing of these events makes it clear that the promotion decisions were made at the Board meeting, which occurred four days after the filing of the grievance.

In an affidavit dated February 22, 2007, Burrows stated that he would have formally applied for a sergeant position had he known that the Board was going to make its decisions based on "merit" (and not based on the criteria listed in the notice of May 3, 2004). Document No. 23-3, p. 1, ¶ 7. Chief Heller executed an affidavit on the same day. Document No. 23-2, pp. 1-2. In his affidavit, Chief Heller declared that Burrows had expressed an interest in being promoted, prompting him to recommend Burrows for a promotion on July 14, 2004. *Id.*, p. 1, ¶¶ 4-5. Chief Heller testified in a deposition that Burrows' desire for a promotion was "common knowledge," and that the Board had most likely known that Burrows wanted to be a sergeant. Document No. 20-7, p. 16. According to Chief Heller, Burrows had expressed frustration with the criteria listed in the notice. *Id.* As far as the Court can discern, Burrows failed to submit a formal application only because he believed that his experience as an OIC would surely be disregarded by the Board.

The Court notes that Burrows signed the grievance that was filed on behalf of the Department's

14

Wage Committee. Document No. 23-4, p. 1. The Board was certainly aware of the grievance, since the grievance appears the likely reason for the board's decision to abandon the promotion criteria listed in the notice of May 3, 2004. Furthermore, Supervisor Meloy testified that Burrows' failure to formally apply for a sergeant position had not totally disqualified him from consideration. Document No. 24-2, p. 2. Supervisor Fulare testified that he had expressed reservations about promoting Burrows, since Burrows' decision not to apply may have reflected a lack of interest in the position. Document No. 20-9, p. 10. Nevertheless, Chief Heller had recommended Burrows for a promotion at the time of the Board's decision, and the Board was aware that Burrows could be promoted even though he had not formally applied for a sergeant position.

Federal courts should not make the *prima facie* inquiry "unduly burdensome" for plaintiffs. *Equal Employment Opportunity Comm'n v. Metal Serv. Co.*, 892 F.2d 341, 351 (3d Cir. 1990). "This is especially true for the application requirement." *Id.* at 351-352. Under the circumstances of this case, a reasonable trier of fact could conclude that the Board was aware of Burrows' interest in being promoted. Consequently, Burrows' claim under the ADEA is not defeated solely because of his failure to submit a formal application.[2] Of course, Logan remains free to argue that it chose not to promote Burrows because of his failure to apply, and not because of his age. Whether Burrows can establish a *prima facie* case under the ADEA depends on whether the Board's decision not to promote him occurred under circumstances giving rise to an inference of age discrimination. The Court now turns

---

[2]Whether a plaintiff has applied for the position at issue is merely one factor relevant to the more general question of whether the employer's decision not to hire or promote the plaintiff has occurred under circumstances giving rise to an inference of age discrimination. In some cases, a plaintiff's failure to submit a formal application may be fatal to his or her *prima facie* case. At this point, the Court observes only that Burrows is not precluded from pursuing a claim under the ADEA merely because of his failure to submit a formal application.

15

to that inquiry with respect to the claims asserted by all four of the Plaintiffs in this case.

The Board promoted Flinn, Hoover and Patterson. Document Nos. 19 & 24, ¶ 9. As of July 22, 2004, Flinn was 55 years old, Hoover was 39 years old, and Patterson was 37 years old. *Id.* ¶ 18. The two youngest applicants, 29-year-old Lindsey and 36-year-old Little, were not promoted. The remaining unsuccessful applicants are Plaintiffs in this action. Burrows, who did not formally apply, was 50 years old at the time. *Id.* ¶ 19. Barton was also 50 years old at the time of the promotion decisions. *Id.* ¶ 18. At that time, Bender was 41 years old and Walter was 40 years old. *Id.* Thus, Logan promoted the oldest applicant (Flinn) and decided not the promote the two youngest applicants (Lindsey and Little).

Logan relies on the Court of Appeals' decision in *Sempier v. Johnson & Higgins*, 45 F.3d 724 (3d Cir. 1995), for the proposition that the Court can consider the ages of the entire applicant pool in determining whether an inference of age discrimination can be drawn. Document No. 6 (06-188J), p. 8. Although the Court agrees with the general premise of Logan's argument, it does not follow that the hiring of Flinn precludes an inference of discrimination from being drawn. In *Sempier*, the Court of Appeals explained that a plaintiff "does not need to produce compelling evidence or conclusive proof" of age discrimination in order to establish a *prima facie* case under the ADEA. *Sempier*, 45 F.3d at 729. Indeed, the Court of Appeals' discussion about the ages of employees other than the plaintiff was used to explain why the plaintiff had established a *prima facie* case of age discrimination. *Id.* at 729-730. *Sempier* stands for the general principle that the *prima facie* inquiry accounts for all of the circumstances surrounding an adverse employment action. *Id.* Hence, a court must consider all such circumstances in determining whether a *prima facie* case of age discrimination has been established.

16

In this case, the Court is convinced that the Plaintiffs have established a *prima facie* case of age discrimination. At the suggestion of Chief Heller, the Board decided to promote three sergeants, rather than just two. Document No. 20-4, p. 2. Chief Heller testified that he had recommended Flinn, Burrows and Barton for promotions in response to an inquiry from Supervisor Meling. Document No. 20-7, p. 8. Logan ultimately promoted Flinn, Patterson and Hoover. Document Nos. 19 & 24, ¶ 9. Patterson and Hoover, who were 37 and 39 years old, were chosen over Burrows and Barton, who were both 50 years old. When Chief Heller's recommended candidates are compared with those who were actually promoted, an inference of age discrimination could be drawn. The Court's inquiry, of course, must account for the overall context of Logan's promotion decisions, including the ages of the individuals specifically recommended by Chief Heller. *Cuddy v. Wal-Mart Super Center, Inc.*, 993 F. Supp. 962, 968 (W.D. Va. 1998).

The Plaintiffs' *prima facie* case is buttressed by Chief Heller's testimony that, in July 2004, OIC designations had been given to Burrows, Flinn and Bender. Document No. 20-7, p. 4. Admittedly, Bender was only two years older than Hoover and four years older than Patterson. The lack of consideration given to Bender's OIC experience, however, may cause a reasonable trier of fact to infer that age discrimination has occurred, especially when the ages of Burrows and Barton are also added to the equation. "It is true that an employer is free to choose an objectively less qualified candidate over a more qualified one." *Courtney v. Biosound, Inc.*, 42 F.3d 414, 423 (7th Cir. 1994). The ADEA does not entitle an objectively qualified employee to a promotion over a less qualified employee. Instead, it prohibits considering an older employee's age in the decision-making process. Nevertheless, the overall context of Logan's decision to promote Patterson and Hoover permits an inference of age

17

discrimination to be drawn, especially since Burrows and Barton were significantly older than these two successful applicants.³

The Plaintiffs have also presented evidence that Chief Heller's predecessor, Chief Rubin Moss ("Chief Moss"), indicated that he had been hired to get rid of older officers. This allegation is supported by affidavits submitted by both Flinn (the oldest applicant) and Lindsey (the youngest applicant). Document Nos. 11-4 & 11-5. Chief Moss was hired as Logan's Chief of Police on September 19, 2002. Document No. 11-7, p. 1, ¶ 3. At that time, the Board consisted of Supervisor Meloy, Supervisor Meling and Supervisor James Patterson ("Supervisor Patterson"). *Id.* ¶ 4. Chief Heller was 53 years old at the time of Chief Moss' appointment. *Id.* ¶ 6. According to an affidavit submitted by Chief Heller, Chief Moss had asked him when he was going to retire. *Id.* ¶ 6. Chief Moss apparently resigned on March 7, 2003, prompting Logan to promote Chief Heller to the position of Acting Chief of Police six days later. *Id.* ¶¶ 5, 7. In his affidavit, Chief Heller also stated that while Hoover and Patterson had been approved for training designed to prepare them for promotion, the Board had denied his request to have Burrows, Barton and Bender undergo leadership training. *Id.*, p. 2, ¶ 11. While this pattern of perceived discrimination does not amount to conclusive proof of age discrimination, it serves to buttress the Plaintiffs' *prima facie* case.

In a deposition, Flinn testified that Chief Moss had repeatedly badgered him about retiring, prompting him to voice complaints to Lewis. Document No. 22-3, p. 2. According to Flinn, Chief Moss had expressly stated that he had been hired to get rid of older officers. *Id.* When asked why he

---

³The Court expresses no opinion as to whether Walter could establish a *prima facie* case under the ADEA if he were proceeding on his own.

18

was ultimately promoted, Flinn attributed the Board's decision to promote him to complaints that he had voiced to his union. *Id.*, p. 4. He also indicated that the Board had been under the impression that he would not remain employed as a Logan police officer for long, since he was already two years past his retirement age at the time of his promotion. *Id.* In an affidavit dated December 1, 2006, Flinn stated that Supervisor Patterson had told him during the summer of 2000 that he "would never get promoted," and that he was "a part of the past." Document No. 11-4, p. 2, ¶ 9.

Logan relies on *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509 (3d Cir. 1992), for the proposition that Chief Moss' alleged statements to his subordinates are inadmissible. Document No. 22, p. 6. However, the language in *Ezold* relied upon by Logan has nothing to do with the issue of admissibility. Instead, the language relates to whether someone's statements are sufficient to support a finding of unlawful discrimination. *Ezold*, 983 F.2d at 545. In *Ezold*, the Court of Appeals reviewed a final decision of a district court finding discrimination. *Id.* at 547-548. *Ezold* did not hold that the comments at issue could not be used to support a *prima facie* case under an anti-discrimination statute. *See id.* In fact, the Court of Appeals specifically observed that a *prima facie* case is "easily made out," and that "it is rarely the focus of ultimate disagreement." *Id.* at 523.

The Court is convinced that the Plaintiffs have overcome the *prima facie* hurdle; hence, the burden of production has shifted to Logan. Unfortunately, Logan makes no attempt to articulate legitimate, nondiscriminatory reasons for its promotion decisions. Instead, Logan has opted to rely solely on the alleged inability of the Plaintiffs to establish a *prima facie* case of age discrimination. Document No. 6 (06-188J), pp. 4-8; Document No. 18, pp. 7-11. Consequently, the Court has no occasion to engage in a meaningful pretext analysis. The Court holds only that the Plaintiffs have

19

satisfied the rather minimal *prima facie* threshold, and that they have shifted the burden of production to Logan. *Equal Employment Opportunity Comm'n v. Metal Serv. Co.*, 892 F.2d 341, 351-52 (3d Cir. 1990). No opinion is expressed as to whether this case is otherwise amenable to resolution at the summary judgment stage.

## VI. CONCLUSION

The evidence of record is sufficient to enable a reasonable trier of fact to infer that Logan's promotion decisions were the product of unlawful discrimination. *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 202 (3d Cir. 1994). Since Logan makes no attempt to explain its reasons for promoting Hoover and Patterson rather than two of the Plaintiffs, the Court must deny Logan's motions for summary judgment, Document No. 5 (06-188J) & Document No. 17. An appropriate order follows.

**AND NOW**, this 17th day of September, 2008, this matter coming before the Court on the Motion to Dismiss (Document No. 5, 06-188J) and the Motion for Summary Judgment (Document No. 17) filed by the Defendant, IT IS HEREBY ORDERED that both motions are **DENIED**.

BY THE COURT:

Kim R. Gibson

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc: Patricia A. Monahan, Esq.
Email: pamonahan@mdwcg.com
Stephen D. Wicks, Esq.
Email: wickslaw1@verizon.net

20